JUDGE: Christopher M. Alston
CHAPTER: 7

# UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

In Re:

WEBB, THOMAS COURTNEY

Debtor(s).

No. 17-15395-CMA

*EX PARTE* APPLICATION FOR ORDER AUTHORIZING EMPLOYMENT OF REAL ESTATE AGENT FOR ESTATE

Edmund Wood, the duly appointed Chapter 7 Trustee in the above-captioned bankruptcy case, applies to this Court for authority to employ Rich Kim and Lumin Brokers, whose offices are located at 5400 Carillon Point, Kirkland, WA, as real estate agent for the trustee and in support thereof states as follows:

1. On July 30, 2015, the above-named debtor(s) filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Western District of Washington at Seattle, and on July 30, 2015, Edmund Wood was appointed as the chapter 7 trustee of the estate.

2. The trustee desires to hire Rich Kim to sell real property on behalf of the estate on a 6% commission basis, subject to Court approval after notice and a hearing. This listing agreement also provides for the payment of a facilitation fee of 1 and ½ percent of the sales price. The trustee is not seeking approval of this facilitation fee. Mr. Kim may apply to the court for approval of the facilitation fee prior to or contemporaneous with approval of the sale, with notice and a hearing. Mr. Kim is a licensed real estate broker and a licensed mortgage broker. Mr. Kim also frequently asks for a payment of $2,500 from the lien holder as contribution to any additional closing fees. If the lien holder agrees, these fees are fully disclosed on any and all settlement statements association with the sale. A copy of the proposed listing agreement is attached.

APPLICATION TO HIRE REAL ESTATE AGENT

Page 1

**Wood & Jones, P.S.**
303 N. 67th Street
Seattle WA 98103-5209
(206) 623-4382

Case 17-15395-CMA    Doc 12    Filed 02/09/18    Ent. 02/09/18 08:08:10    Pg. 1 of 7

3. Rich Kim and Lumin Brokers have previously worked with Edmund J. Wood, Trustee in other bankruptcy cases and it is anticipated that this will continue.

4. The trustee is aware of no connections between Rich Kim, and the debtor, creditors, any party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee other than as set forth above. No notice to creditors or interested parties of this motion is necessary pursuant to 11 U.S.C. section 102(1) and FRBP 2002.

5. The Trustee is not aware of any interest adverse to the estate held by Rich Kim and Lumin Brokers and believes them to be disinterested pursuant to 11 USC §101(14).

WHEREFORE, the trustee applies to the Court for an order authorizing the employment of Rich Kim and Lumin Brokers to list and sell property of the estate as described in this application as of the date this application and order are submitted to the office of the United States Trustee, with all compensation subject to Court order upon notice to creditors and a hearing.

DATED: February 8, 2018

        */s/ Edmund Wood*
        Edmund Wood, WSBA #03695
        Chapter 7 Trustee

I CERTIFY under penalty of perjury that on February 8, 2018, I caused a copy of the foregoing document to be delivered to the U.S. Trustee by email at USTPRegion18.SE.ECF@usdoj.gov, and the U.S. Trustee's Office has no objection or seven days have passed since submission to the U.S. Trustee's Office.

        */s/ Dominique Moses*
        Dominique Moses, Paralegal

Kim - App to Hire

APPLICATION TO HIRE REAL ESTATE AGENT      **Wood & Jones, P.S.**
303 N. 67th Street
Seattle WA 98103-5209
Page 2      (206) 623-4382

Case 17-15395-CMA    Doc 12    Filed 02/09/18    Ent. 02/09/18 08:08:10    Pg. 2 of 7

Form 1A  
Exclusive Sale  
Rev. 6/13  
Page 1 of 2

EXCLUSIVE SALE AND LISTING AGREEMENT

©Copyright 2013  
Northwest Multiple Listing Service  
ALL RIGHTS RESERVED

Edmund J Wood, Chapter 7 Trustee for Thomas Courtney Webb _____ ("Seller") 1

hereby grants to Lumin Brokers _____ , ("Real Estate Firm" or "Firm") 2

from date hereof until midnight of Perpetual _____ ("Listing Term"), the sole and exclusive right 3

to submit offers to purchase, and to receipt for deposits in connection therewith, the real property ("the Property") 4

commonly known as 8808 Interlake Ave N _____ 5

in the City of Seattle _____ , County of King _____ , State of Washington, Zip 98103 ____ ; 6

to be listed at $ 625,000 _____ and legally described as: LOT _____ , BLOCK _____ , 7

DIVISION _____ , VOL _____ , PAGE _____ 8

BOULEVARD PLACE ADD PLAT BLOCK: 19 PLAT LOT: 3-4 _____ . 9

1. **DEFINITIONS.** For purposes of this Agreement: (a) "MLS" means the Northwest Multiple Listing Service; and (b) "sell" includes a contract to sell; an exchange or contract to exchange; an option to purchase; and/or a lease with option to purchase.

2. **AGENCY/DUAL AGENCY.** Seller authorizes Firm to appoint Rich Kim _____ as Seller's Listing Broker. This Agreement creates an agency relationship with Listing Broker and any of Firm's brokers who supervise Listing Broker's performance as Seller's agent ("Supervising Broker"). No other brokers affiliated with Firm are agents of Seller, except to the extent that Firm, in its discretion, appoints other brokers to act on Seller's behalf as and when needed. If the Property is sold to a buyer represented by one of Firm's brokers other than Listing Broker ("Buyer's Broker"), Seller consents to any Supervising Broker, who also supervises Buyer's Broker, acting as a dual agent. If the Property is sold to a buyer who Listing Broker also represents, Seller consents to Listing Broker and Supervising Broker acting as dual agents. If any of Firm's brokers act as a dual agent, Firm shall be entitled to the entire commission payable under this Agreement plus any additional compensation Firm may have negotiated with the buyer. Seller acknowledges receipt of the pamphlet entitled "The Law of Real Estate Agency."

3. **LIST DATE.** Firm shall submit this listing, including the Property information on the attached pages and photographs of the Property (collectively, "Listing Data"), to be published by MLS by 5:00 p.m. on TBD _____ ("List Date"), which date shall not be more than 30 days from the effective date of the Agreement. Seller acknowledges that exposure of the Property to the open market through MLS will increase the likelihood that Seller will receive fair market value for the Property. Accordingly, prior to the List Date, Firm and Seller shall not promote or advertise the Property in any manner whatsoever, including, but not limited to yard or other signs, flyers, websites, e-mails, texts, mailers, magazines, newspapers, open houses, previews, showings, or tours.

4. **COMMISSION.** If during the Listing Term (a) Seller sells the Property and the buyer does not terminate the agreement prior to closing; or (b) after reasonable exposure of the Property to the market, Firm procures a buyer who is ready, willing, and able to purchase the Property on the terms in this Agreement, Seller will pay Firm a commission of (fill in one and strike the other) 6.0 ____ % of the sales price, or $ NA _____ ("Total Commission"). From the Total Commission, Firm will offer a cooperating member of MLS representing a buyer ("Selling Firm") a commission of (fill in one and strike the other) 2.5 ____ % of the sales price, or $ NA _____ . Further, if Seller shall, within six months after the expiration of the Listing Term, sell the Property to any person to whose attention it was brought through the signs, advertising or other action of Firm, or on information secured directly or indirectly from or through Firm, during the Listing Term, Seller will pay Firm the above commission. Provided, that if Seller pays a commission to a member of MLS or a cooperating MLS in conjunction with a sale, the amount of commission payable to Firm shall be reduced by the amount paid to such other member(s). Provided further, that if Seller cancels this Agreement without legal cause, Seller may be liable for damages incurred by Firm as a result of such cancellation, regardless of whether Seller pays a commission to another MLS member. Selling Firm is an intended third party beneficiary of this Agreement.

5. **SHORT SALE / NO DISTRESSED HOME CONVEYANCE.** If the proceeds from the sale of the Property are insufficient to cover the Seller's costs at closing, Seller acknowledges that the decision by any beneficiary or mortgagee, or its assignees, to release its interest in the Property, for less than the amount owed, does not automatically relieve Seller of the obligation to pay any debt or costs remaining at closing, including fees such as Firm's commission. Firm will not represent or assist Seller in a transaction that is a "Distressed Home Conveyance" as defined by Chapter 61.34 RCW unless otherwise agreed in writing. A "Distressed Home Conveyance" is a transaction where a buyer purchases property from a "Distressed Homeowner" (defined by Chapter 61.34 RCW), allows the Distressed Homeowner to continue to occupy the property, and promises to convey the property back to the Distressed Homeowner or promises the Distressed Homeowner an interest in, or portion of, the proceeds from a resale of the property.

_____  _____/s/ EW_____  
Seller     Seller

Form 1A
Exclusive Sale
Rev. 6/13
Page 2 of 2

**EXCLUSIVE SALE AND LISTING AGREEMENT**
*Continued*

©Copyright 2013
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

6. **KEYBOX.** Firm is authorized to install a keybox on the Property. Such keybox may be opened by a master key held by members of MLS and their brokers. A master key also may be held by affiliated third parties such as inspectors and appraisers who cannot have access to the Property without Firm's prior approval which will not be given without Firm first making reasonable efforts to obtain Seller's approval.

7. **SELLER'S WARRANTIES AND REPRESENTATIONS.** Seller warrants that Seller has the right to sell the Property on the terms herein and that the Property information on the attached pages to this Agreement is correct. ~~Further, Seller represents that to the best of Seller's knowledge, there are no structures or boundary indicators that either encroach on adjacent property or on the Property.~~ Seller authorizes Firm to provide the information in this Agreement and the attached pages to prospective buyers and to other cooperating members of MLS who do not represent the Seller and, in some instances, may represent the buyer. Seller agrees to indemnify and hold Firm and other members of MLS harmless in the event the foregoing warranties and representations are incorrect.

8. **CLOSING COSTS.** Seller shall furnish and pay for a buyer's policy of title insurance showing marketable title to the Property. Seller shall pay real estate excise tax and one-half of any escrow fees or such portion of escrow fees and any other fees or charges as provided by law in the case of a FHA or VA financed sale. Rent, taxes, interest, reserves, assumed encumbrances, homeowner fees and insurance are to be prorated between Seller and the buyer as of the date of closing.

9. **MULTIPLE LISTING SERVICE.** Seller authorizes Firm and MLS to publish the Listing Data and distribute it to other members of MLS and their affiliates and third parties for public display and other purposes. This authorization shall survive the termination of this Agreement. Firm is authorized to report the sale of the Property (including price and all terms) to MLS and to its members, financial institutions, appraisers, and others related to the sale. Firm may refer this listing to any other cooperating multiple listing service at Firm's discretion. Firm shall cooperate with all other members of MLS, or of a multiple listing service to which this listing is referred, in working toward the sale of the Property. Regardless of whether a cooperating MLS member is the agent of the buyer, Seller, neither or both, such member shall be entitled to receive the selling firm's share of the commission. MLS is an intended third party beneficiary of this agreement and will provide the Listing Data to its members and their affiliates and third parties, without verification and without assuming any responsibility with respect to this agreement.

10. **DISCLAIMER/SELLER'S INSURANCE.** Neither Firm, MLS, nor any members of MLS or of any multiple listing service to which this listing is referred shall be responsible for loss, theft, or damage of any nature or kind whatsoever to the Property and/or to any personal property therein, including entry by the master key to the keybox and/or at open houses. Seller is advised to notify Seller's insurance company that the Property is listed for sale and ascertain that the Seller has adequate insurance coverage. If the Property is to be vacant during all or part of the Listing Term, Seller should request that a "vacancy clause" be added to Seller's insurance policy.

11. **FIRM'S RIGHT TO MARKET THE PROPERTY.** Seller shall not commit any act which materially impairs Firm's ability to market and sell the Property under the terms of this Agreement. In the event of breach of the foregoing, Seller shall pay Firm a commission in the above amount, or at the above rate applied to the listing price herein, whichever is applicable. Unless otherwise agreed in writing, Firm and other members of MLS shall be entitled to show the Property at all reasonable times. Firm need not submit to Seller any offers to lease, rent, execute an option to purchase, or enter into any agreement other than for immediate sale of the Property.

12. ~~**SELLER DISCLOSURE STATEMENT.** Unless Seller is exempt under RCW 64.06, Seller shall provide to Firm as soon as reasonably practicable a completed and signed "Seller Disclosure Statement" (Form 17 (Residential), Form 17C (Unimproved Residential), or Form 17 Commercial). Seller agrees to indemnify, defend and hold Firm harmless from and against any and all claims that the information Seller provides on Form 17, Form 17C, or Form 17 Commercial is inaccurate.~~

13. **DAMAGES IN THE EVENT OF BUYER'S BREACH.** In the event Seller retains earnest money as liquidated damages on a buyer's breach, any costs advanced or committed by Firm on Seller's behalf shall be paid therefrom and the balance divided equally between Seller and Firm.

14. **ATTORNEYS' FEES.** In the event either party employs an attorney to enforce any terms of this Agreement and is successful, the other party agrees to pay reasonable attorneys' fees. In the event of trial, the successful party shall be entitled to an award of attorneys' fees and expenses; the amount of the attorneys' fees and expenses shall be fixed by the court. The venue of any suit shall be the ~~county in which the Property is located.~~ United States Bankruptcy Court for the Western District of Washington

DATED THIS 25th DAY OF January, 2018. Are the undersigned the sole owner(s)? ☒ YES ☐ NO

FIRM (COMPANY) Lumin Brokers                    SELLER: _[signature]_ ch.7

BY: _[signature]_                                SELLER: Trustee



© Copyright 2014
Lumin Brokers, Inc.
All Rights Reserved

## RESIDENTIAL REAL ESTATE CHAPTER 7 BANKRUPTCY TRUSTEE SALE
## UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF WASHINGTON

### Addendum to Listing Agreement

Date: January 25, 2018    MLS Number: _____

Property: 8808 Interlake Ave N    City: Seattle    State: WA    Zip: 98103

Trustee: Edmund J Wood    Case Number: 17-15395

Debtor: Thomas Courtney Webb    Co-Debtor: _____

Listing Firm: Lumin Brokers    Address: 5400 Carillon Point
MLS Office Number: 5063    City: Kirkland    State: WA    Zip: 98033
Listing Broker: Rich Kim    Phone Number: (206) 888-8888
MLS LAG Number: 47547    E-Mail Address: Sales@LuminBrokers.com

This Addendum modifies the Listing Agreement for the listing and property commonly identified above.

1. **Short Sale.** This property may be being sold as a short sale. Any sale is subject to approval of lienholders of record, which approval may be conditioned on modifications to the agreement and/or to the listing agreement. The Bankruptcy Trustee has no control over lienholder approval and cannot guarantee that any offer will be accepted.

2. **Bankruptcy Sale.** This property is being sold by the Bankruptcy Trustee in a pending bankruptcy case. The Bankruptcy Trustee does not own the Property or have the right to sell the Property without the approval of the Bankruptcy Court, which approval may be conditioned on modifications to the agreement and/or to the listing agreement. The Bankruptcy Trustee has no control over court approval and cannot guarantee that any offer will be accepted.

3. **Knowledge and Warranties Regarding Property.** The Bankruptcy Trustee has no personal knowledge of the Property, and expressly disclaims all warranties that any information provided in this listing is accurate or complete. All sales shall be as-is with no warranties of any kind. Buyer will be required to fully investigate all aspects of the Property to Buyer's satisfaction.

4. **Deed.** Title shall be conveyed by a Trustee's Quitclaim Deed free and clear of liens and interests, pursuant to court order. The Bankruptcy Trustee makes no warranties or representations of any kind with respect to title and shall assume no liabilities concerning the Property after closing.

Initials:
Trustee: _EW_    Date: 1/25/18    Initials: Listing Broker: _RK_    Date: 1/30/2018

Lumin Brokers   Sales Department
5400 Carillon Point, Kirkland, WA 98033
phone: 206.888.8888   toll-free: 888.88.LUMIN (888.885.8646)   fax: 888.715.1711   e-mail: Sales@LuminBrokers.com
WA REAL ESTATE BROKER LICENSE #9607   WA MORTGAGE BROKER LICENSE #MB-120818

Addendum to Listing Agreement
Revised 6/2014
Page 2 of 3



© Copyright 2014
Lumin Brokers, Inc.
All Rights Reserved

## RESIDENTIAL REAL ESTATE CHAPTER 7 BANKRUPTCY TRUSTEE SALE
### UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF WASHINGTON

5. **Commissions.** If the commission is reduced by the court or a lienholder as a condition to approval, then the reduction of the commission shall be determined pursuant to NWMLS Rules. For purposes of this paragraph, commission modifications imposed by the Court shall be treated that same as modifications imposed by creditors.

6. **Delayed Listing and Listing Price.** Lumin Brokers will conduct or contract an appraisal, broker price opinion, or comparative market analysis on the above mentioned property. Upon completion, the listing price shall be established and the Bankruptcy Trustee authorizes Lumin Brokers to continue to adjust the listing price at Lumin Broker's discretion without further notice until an acceptable purchase offer is received unless otherwise expressly notified in writing. Additionally, it will be necessary to coordinate with any existing occupant(s) of the property prior to listing the property. The Bankruptcy Trustee authorizes Lumin Brokers to delay listing the property with the multiple listing service(s) until the valuation and coordination with occupants is complete.

7. **Seller Info Undisclosed.** In consideration that the Bankruptcy Trustee is not a homeowner Seller, Seller request that Seller's name and phone number be omitted from the information included in the Property's listing and shall not be made available to other real estate Brokers.

8. **Presentation to Listing Firm.** In consideration that the Bankruptcy Trustee is not a homeowner Seller, Seller requests that all offers only be presented to or through the Listing Firm and only offers which have been deemed acceptable for mutual acceptable at the discretion of Lumin Brokers shall be presented to the Seller.

9. ~~**Licensing.** Lumin Brokers is licensed as both a real estate brokerage and a mortgage brokerage. All Bankruptcy Trustee Sale and Short Sale Facilitation shall be conducted pursuant to its status as a licensed mortgage brokerage and in compliance with RCW 19.146 and WAC 208-660.~~

10. ~~**Bankruptcy Trustee Sale and Short Sale Facilitation Fee Agreement.** In consideration for its work in facilitating the Bankruptcy Trustee Sale and Short Sale of Property, Lumin Brokers is entitled to a facilitation fee equal to 1.5% of the final gross sale Purchase Price of the Property. This fee shall be paid ☒ by the Buyer at closing ☐ from the proceeds of sale. If paid by the Buyer, this fee shall be paid in cash at closing and is in addition to the Purchase Price. If this Agreement states that the fee shall be paid from the proceeds of sale and during the course of the transaction it is determined that it actually cannot be paid in this manner, for whatever reason, the Buyer can elect to agree to pay the fee under the above described terms or Seller may give notice terminating this Agreement and refunding Buyer's Earnest Money. An additional $2,500 will also be requested to be paid from the proceeds of sale which is subject to lienholder approval. These fees shall be fully disclosed on any and all settlement statement(s) in association with the transaction.~~

Initials:
Trustee: _EW_   Date: 1/25/18

Initials:
Listing Broker: _R_   Date: 1/30/2018

Lumin Brokers  Sales Department
5400 Carillon Point, Kirkland, WA 98033
phone: 206.888.8888   toll-free: 888.88.LUMIN (888.885.8646)   fax: 888.715.1711   e-mail: Sales@LuminBrokers.com
WA Real Estate Broker License #9607   WA Mortgage Broker License #MB-120818


Addendum to Listing Agreement
Revised 6/2014
Page 3 of 3

# LUMIN
BROKERS
*brighter real estate & mortgage solutions*

© Copyright 2014
Lumin Brokers, Inc.
All Rights Reserved

**RESIDENTIAL REAL ESTATE CHAPTER 7 BANKRUPTCY TRUSTEE SALE**
**UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF WASHINGTON**

11. **Bankruptcy Trustee Carve Out/Buyer's Premium.** To obtain Bankruptcy Court approval of this transaction, Seller will have to show that the sale will provide a benefit to the unsecured creditors in the Case. The amount of the Bankruptcy Trustee Carve Out/Buyer's Premium shall be calculated based on the Purchase Price as follows: 25% of the first $5,000 or less, 10% of any amount in excess of $5,000 but not in excess of $50,000, 5% of any amount in excess of $50,000 but not in excess of $1,000,000, and 3% of any amounts in excess of $1,000,000; the sum of which shall be no less than $20,000_____. This fee shall be paid ☒ by the Buyer at closing ☐ from the proceeds of sale. If paid by the Buyer, the Buyer's Premium shall be paid in cash at closing and is in addition to the Purchase Price. If this Agreement states that the fee shall be paid from the proceeds of sale and during the course of the transaction it is determined that it actually cannot be paid in this manner, for whatever reason, the Buyer can elect to agree to pay the fee under the above described terms or Seller may give notice terminating this Agreement and refunding Buyer's Earnest Money. An additional $2,500 will also be requested to be paid from the proceeds of sale which is subject to lienholder approval. These fees shall be fully disclosed on any and all settlement statement(s) in association with the transaction.

12. **Bankruptcy Court Filing Fee.** Buyer ☒ shall ☐ shall not be responsible for paying the Bankruptcy Court Filing Fee. If paid by the buyer, the check shall be delivered to the Closing Agent not later than 2 business days after mutual acceptance of this Agreement. Buyer acknowledges and agrees to pay the sum of $176 as a non-refundable fee to the United States Bankruptcy Court for the Bankruptcy Trustee's filing of a motion to approve sale free and clear of liens. In the event that the sale closes, Buyer shall be entitled to credit at closing for the fee. In the event that this sale does not close, for whatever reason, the fee shall be considered non-refundable and shall not be credited or repaid to the Buyer. The Closing Agent is instructed to release the check 7 business days after mutual acceptance of this Agreement to the Attorney for the Bankruptcy Trustee or the Bankruptcy Trustee if an Attorney has yet to be employed. However, if the Agreement is terminated prior to the Closing Agent releasing the check, the check shall be returned to the Buyer. If the sale closes, the Bankruptcy Trustee agrees to credit the Buyer the amount of the fee from proceeds of the Bankruptcy Trustee Carve Out/Buyer's Premium at closing.

13. **Pre-Approval.** In consideration that a Bankruptcy Trustee Short Sale is a unique transaction which may not be approved by all lender and investor guidelines, Buyer will be required to obtain a pre-approval through a preferred lender ~~assigned at Lumin Broker's discretion~~ which has acknowledged that the transaction structure is with the realm of the type of transaction which meets their specific lender and investor guidelines for approval. The Buyer will be able to choose from a list of preferred lenders provided by Lumin Brokers. The Buyer can ultimately choose to close with any lender of their choosing.

Signatures:
Trustee: _____
Date: 1/25/18

Signatures:
Listing Broker: _____
Date: January 30, 2018

Initials:
Trustee: EW      Date: 1/25/18

Initials:
Listing Broker: _____      Date: 1/30/2018

Lumin Brokers  *Sales Department*
5400 Carillon Point, Kirkland, WA 98033
phone: 206.888.8888    toll-free: 888.88.LUMIN (888.885.8646)    fax: 888.715.1711    e-mail: Sales@LuminBrokers.com
WA Real Estate Broker License #9607   WA Mortgage Broker License #MB-120818

